This is the Florida Birth-Related Neurological Injury Compensation Association and others. And Jonathan Siegelab is here for the appellants, Michael Finney is here for the appellees, and Mr. Siegelab, you may begin with your argument. Good morning, your honors. May it please the court. Good morning, your honors. May it please the court. I'm Jonathan Siegelab on behalf of the Florida Birth-Related Neurological Injury Compensation Plan and Association that we refer to together as NICA. NICA is a state program that was created by the legislature to serve the state purpose of ensuring access to essential medical services. Under this court's Manders test, there is no question that NICA is an arm of the state. I'd like to walk through the four factors beginning with factor one. State law very clearly treats NICA as part of the state. First, the NICA statutes explicitly recognize NICA's sovereign immunity under state law because the statutes waive that immunity for a limited class of claims. And of course, there would need to be immunity in the first place for there to be a waiver. Well, let me ask you something. Why shouldn't we consider the recent changes made to the NICA statute in 2021? I think you should consider those, your honor, because this case is ongoing today. So, the question is, is NICA an arm of the state today? If it is, it can't be a defendant in an FCA case. So, I think the court absolutely should consider those. What do we do with this Florida Statute 766.3151A, which defines the association as, quote, not a state agency, board, or commission, close quote? Sure. Your honor, we would say that means exactly what it says. NICA is not an agency, board, or commission. But that's not particularly significant here because the state is much broader than just agencies, boards, and commissions. There are entities that are not agencies, boards, and commissions that are still part of the state. And this court's jurisprudence has recognized a number of them. Citizens' Property Insurance Corporation is not an agency. State universities are not agencies. They're identified by the state in the financial reporting as component units of the state. The state, in its reporting, divides itself into two categories. Primary government, which includes the legislature, the courts, the governor and cabinet, and the executive departments, agencies, boards, or commissions, and also component units, which are legally separate entities controlled by the state. NICA is listed as a component unit, which we think is very significant because there are multiple other entities that are also listed as component units. Is this the strongest manders factor that supports you? We think factors 1 and 2, well, we think all the factors support us. But we think 1 certainly does, and 2 and 3 as well. Well, the district court thought that the second manders factor, the degree of control the state maintains over the entity, was neutral. It didn't find in your favor with regard to the other manders factors. But I'm not so sure if, in fact, the association is solely responsible for determining which claims get paid. The employees are not hired by the state. They approve their own budget. The association is not represented by state lawyers. The Florida chief financial officer has no oversight. You're representing these associations. You're probably paid from the association rather than out of the state treasury yourself here today. We are paid by the association, Your Honor. But I'm happy to address each of those points in turn. In terms of control over the claims process, that is controlled by the state ALJs. The statutes are very clear about that. Section 766.304 is literally entitled, Administrative Law Judge to Determine Claims. And it says, the ALJ shall hear and determine all claims filed. The ALJ is exclusive jurisdiction to determine whether a claim filed under this act is compensable. So the statutes say that the ALJ, who's a state official and not NICA, is responsible for deciding which claims get paid. And that's how the process works in practice. The ALJ makes an initial eligibility determination to decide if a child qualifies for the program. Once the child qualifies, the ALJ issues an initial award, which sets forth what expenses are going to be covered for that child. And then as expenses are incurred in the future, they get submitted to NICA. But all NICA does is determine whether they fall within the coverage provisions of the ALJ's award. And any denial is then immediately appealable to the ALJ, who holds an administrative hearing with fact-finding, evidentiary submissions, and decides it on a de novo standard of review. So I think it's clear just based on what the statutes say and how the process works that it's the ALJ and not NICA that decides what claims are paid. With respect to hiring private counsel, that's not uncommon for public entities in Florida to hire private counsel. There are a number of entities that have been held to be arms of the state in past cases by this court that were represented by private counsel in those proceedings. What about the fact that the members of the board are removable basically only for cause? That is, you know, a new governor comes in, a new administration comes in, that new administration isn't a big fan of whoever is on the board, but they can't get rid of them unless there's cause. Isn't that so? That's true, Your Honor. But the reality is that those members are appointed by the state CFO, so they are political appointees. But without confirmation by the legislature. And that makes it somewhat different from other cases where we have found appointed boards to be part of the state. Sure. You know, no two entities are going to be identical. There are always going to be differences. But the sheer volume of indicators of state control, the fact that they're appointed by the CFO, the fact that NICA's only governing documents are the statutes themselves and the plan of operations, which can only be amended with approval from the Office of Insurance Regulation. So the state controls the contents of NICA's governing documents, you know, as well as choosing the decision makers. So those two things together are strong evidence of state control. I'm sorry, Judge Wilson. I lost track of the other items you mentioned on your list. Well, does the Florida Chief Financial Officer have any oversight? Does he really have any oversight at all? Well, the CFO selects the board. And that's it? That's all he does? That's not all he does. The CFO is involved. The board communicates with him. The board has to submit annual audited financials to the legislature and the Office of Insurance Regulation. They submit a detailed annual report to the CFO and the governor and the legislative leaders. So there's pretty extensive oversight over NICA from the state. But that's with the new statute, the 2021 statute, which I had asked you about initially. I mean, don't we look at the time of the wrongdoing for applicability of the statute as opposed to today? Well, again, Judge Covington, I don't think there's some sort of safe harbor, you know, look-back provision. The question is whether it's an arm of the state today. Because if it is, it can't be sued in an FCA case. The case is ongoing now. And further, if you look at what was done . . . I'm sorry to interrupt, but let's think about the implications of what you've just said. Let's say, let's just take it out of this situation. Let's say that, you know, you've got a 1983 case and the sheriff is clearly, under our current case law, for whatever reason, considered to be not an arm of the state. The sheriff's . . . Well, the sheriff's department goes ahead and violates someone's clearly established constitutional rights. So as of the time that happens, there would be a cause of action. There would not be sovereign immunity. There would not be . . . So you would get to the part where there would be possible a recovery. You're saying that, let's say that a change is made to the structure of the sheriff's office between when that happens and after the claim is filed. Now, what used to be compensable is no longer compensable. Is that your position? It is, Your Honor. And do you have any authorities to support that? We haven't cited any specific authorities, but, you know, just as a matter of logic . . . Is there some . . . I mean, you know, for lack of a better term and using it sort of as an analogy, doesn't it seem like there's kind of an ex post facto type of problem with that? I mean, obviously, it's not an ex post facto problem, but it seems kind of similar, doesn't it? I mean, you have this right. It seems like it's pretty much vested, and now you don't have this right because now there's sovereign immunity. I mean, maybe that's right. I don't know off the top of my head. That's why I'm asking you for authorities. I don't have any authority I can cite right now, but we'd be happy to supply a letter to the court if the court's interested. But just as a matter of logic, if there's sovereign immunity, the entity can't be sued. It's a right to not be sued. So if that's the case . . . But you've already been sued, right? So the question is a different one. I agree with you. If there's sovereign immunity, it's a right not to be sued. It's not a right not to have damages imposed against you. It's a right not to be sued. But this is a different question, right? The question is, you know, it's well established that there's no right not to be sued at the time that the action happens and the time the suit is filed. Sometime after the suit is filed, but before the suit is fully resolved, now there's a change in how the entity is viewed, I guess, because there's new legislation. Can what used to be a right to sue disappear in an ongoing case that occurred before that was changed? That's what the question is. That is a different question from whether there was sovereign immunity throughout the entire time. I mean, it seems to me. We understand, Your Honor, and we think it is within the purview of the state to immunize a state entity that maybe wasn't recognized as such in this Court's jurisprudence previously. But the other thing I'd say on the retroactivity point is that if you look at some of the changes that were made in the statutes designating NICA's senior management and board as public officers or employees, subjecting the board meetings to the open meetings law for public entities, those things could not have happened unless the legislature recognized that NICA was a public entity. So we think that the legislation didn't change NICA's status. It simply acknowledged what was already its status under state law, which is as an arm of the state. Isn't one of the sort of most important things where the money is coming from to satisfy any judgments? That's certainly an important consideration. And here, the Florida Supreme Court has held that the non-participating assessments are taxes under state law. But you can have taxes by entities that are not an arm of the state. I mean, municipalities impose taxes, and that doesn't make them an arm of the state. Sure, local entities are not arms of the state, and they can impose taxes. But NICA's not a local entity. It's a statewide entity. There's one NICA that covers the whole state. So I don't think cases or authority dealing with local entities are that relevant here. And local entities have the right to impose taxes themselves. They can impose their own property taxes or sales taxes. They can adjust the rates. NICA cannot do any of those things. Assessments are fixed by statute. NICA has no control over them. It just collects. So its income comes from what now? Excuse me? Its income comes from – it's primarily physician assessments, the annual $5,000 fees. That's where it gets most of its income, right? No. Its investments. Most of the assessments – the assessment income is divided between non-participating and participating. The non-participating is actually substantially more than the participating because every physician in the state pays the non-participating, and then it earns investment income as well. So the legislature initially approved $20 million, and then there's $20 million set aside in reserve, and then everything else – nothing else comes from the state, right? Well, again, the assessments are taxes under state law, so we would say that that is state revenue because the state imposed a tax that just gets paid directly to NICA. Thank you. Mr. Finney, you may proceed. Good morning. May it please the court, Michael Finney, along with Monica Munday, on behalf of the Relator Appellees, Veronica Arvin, and the estate of Theodore Arvin. The court's four-factor Manders analysis controls this appeal, and NICA has failed to carry its burden of showing that it is an arm of the state. The first factor asks how state law defines the entity. Can I stop you for a minute? So your friend on the other side here has pointed to the fact that administrative law judges who are state employees are making these decisions. What role does that have in our analysis? Why doesn't that help point the first factor to a determination that it favors the determination that it's a state entity? Sure. The district court judge found the relevant function was NICA making payment decisions after eligibility was determined, and the structure of NICA is that, yes, the ALJ can make that initial eligibility determination, but then the expenses are reviewed and paid or denied by NICA as they are incurred. Does NICA, after the ALJ makes those determinations, does NICA have any discretion in deciding whether or not to pay it? Yes, because it basically, the typical award says that NICA would pay all the medically necessary and reasonable expenses for the injured child's life, and as those expenses are incurred, NICA is the entity that reviews and decides whether to pay. You mean decides whether it's medically necessary? And reasonable and whether an exclusion applies under the statute, which is the heart of this False Claims Act case. And what if there is a controversy over whether something's medically necessary? There is the ability to file an appeal and to take it to the ALJ, but NICA, in an article authored by the executive director, says that its staff makes these determinations, and it construed the statutory language at issue. So it's only then taken to the ALJ if there's a dispute. But I guess what I'm asking is, does the ALJ have ultimate authority as to what the determination is? I believe that it would have that authority. It might be able to be reviewed again in a different court, but it could be taken to the ALJ. So is there some reason why that either wouldn't favor the determination that, at least on the first-demanders factor, that NICA is a state entity? Or if it does favor that determination, whether there are some kind of other factors that outweigh that on the first factor? Sure. The first factor looks at how state law defines the entity, which in this case is NICA. So we've talked about the definition of not a state agency, border commission. The significance of being a state agency in this court's 11th circuit, excuse me, to armor the state inquiry is clear. In the 2017 Miller case, the court stated that the first-manders factor asks us to consider whether state law treats an entity more like a state agency or more like a political subdivision. In this case, there's no need to weigh on the spectrum because NICA is clearly not a state agency. In addition, the structure of 766.315 is instructive. There, the plan is governed by the association. The association is a board of directors. The very next sentence, the legislature said, this board, which it just created, is not a state board. And if you look at subsection 4, it says that the board of directors shall have the following powers. And it enumerates a number of functions, including the very function at issue here, the administering the payment of claims. For all of these functions, again, the setup is the state created the association, this board gave it powers, but said, you are not a state board. The thing we just denominated you as, a board, you're not. What about the other statement that says that we're waiving sovereign immunity only to the extent that it's necessary? What does that tell us? I think as was stated by counsel, that is a waiver of state sovereign immunity in interstate law. It's black letter law that state sovereign immunity is different than 11th Amendment immunity in federal court. Because states are sovereigns, they can set the bounds of their immunity as liberally as they would like.  extending to counties, municipalities, and other political subdivisions. I have a preliminary question before you continue with your Manders factors analysis. It was a little ambiguous to me on whether the district court's ruling on the arm of the state analysis applied to both the association and the plan rather than to the association alone. There were times where maybe the plural was used, sometimes when the singular was used. Is it your position that the best reading of the order is that the district court was ruling on the immunity issue for both the association and the plan? Because, of course, that impacts on the fundamental question of whether this court even has jurisdiction. Sure. And I recognize there was ambiguity both in, I think, NICA's initial motion, and that may have turned into the court's opinion. Given NICA's response to the jurisdictional question as well as the representations on briefing here today that it's sort of one entity, and that makes sense given how the plan is governed by the association. We do not object to construing things in favor of... that the plan had appealed the ruling as well. Right. I didn't think you did based on what I had read, but I just wanted to clarify that. Thank you. So, and just to finish the point on state sovereign immunity, you know, that is a typical circumstance where an entity could have state sovereign immunity and not 11th Amendment immunity. For example, the school board in the Lightfoot case, that was the end result after the court's decision. Turning to the second... I'm sorry, before you do that, can I direct your attention to something else that Mr. Segal mentioned, and that is he was asked about the effects of the legislation. And I know that the argument was that it's always been an arm of the state, but there was also an argument, it sounded to me, maybe an alternative argument, that even if it wasn't originally an arm of the state, it is now. And I wonder if you had any thoughts on whether we should be looking at the current version or the version that was in place at the time of... at the time this was filed. Sure. So I think as a threshold purely legal matter, I believe the changes in the new law do not apply. Even if they did, NICA would still be an arm of the state. So first, the question of whether they should apply or not. You know, we did look for authority. The party submitted Rule 28J letters about how to consider... you know, when to consider the entity's status. We did find a circuit court case that has some similarities, the Third Circuit in Chisholm. There, the entity was a court that was transitioning from a state court to a county court, and the Third Circuit said, this is an interesting question, you know, when to look at the entity. And it said it either should be at the time the complaint is filed, perhaps because that's when the rights had vested, or the time of the alleged wrongdoing. Now, complaint obviously was filed before the changes in the law. The time of the alleged wrongdoing, it's interesting. In NICA's response to the Rule 28J letter, it said, well, we had considered there was an ambiguity in state law. You know, we disagree, but NICA said it considered there was an ambiguity in state law. But it's now been resolved with the new law. And Medicaid is the payer of last resort. So there's every indication that the wrongdoing that underlies this lawsuit has stopped with the passage of the law. In addition, under this court's functional inquiry, which looks at the actions out of which liability is asserted to arise, it would seem that that would counsel in favor of maybe the alleged wrongdoing as the right time. But in either event, I don't think as a legal matter the new law should apply. And Your Honor, to your kind of, maybe the implications of this. I mean, it almost seems like a taking. I don't really know what to call it. It's the retroactivity problem. Yeah, and I certainly believe it would be a perverse result if, for example, after a lawsuit was filed alleging malfeasance of an entity, and it's a state-created entity, but the state had not been maintaining control over that entity, and it looks and it says, boy, this has kind of gotten off the rails, and then imposes controls. And particularly if the legislation, in making these changes, the legislature considered the very lawsuit at issue. And then for the entity to come in and say, well, after the suit was filed, these changes now exempt me from having to face substantive review. I don't think that's supported by the authority. I don't think it would be, and I'm struggling with the terminology, fair or it would be sort of a perversion of justice. But even if the changes did apply, it wouldn't change the analysis. Most of the items that NICA points to are for a limited purpose. And the fact that the legislature had to say, no, this part of state law applies, or this part of state law would apply for a certain purpose, indicates that it doesn't automatically apply to NICA. It also illustrates the lack of controls earlier. The changes don't speak to the function at issue, which are these payment decisions. And in addition, Section 7 is very powerful. It says that NICA is a third-party benefit provider and charges a state agency, an actual state agency, ACCA, with determining, making a review and determining what NICA owes to ACCA. So it's defining NICA, it appears, in negative, again, relation to the state, apart from the state, for the very function at issue. And in addition, the fourth factor, who is responsible for a judgment? Not only is Florida not responsible for a judgment for the reasons we've articulated on brief, but Florida certainly believes it would be owed money for the exact same conduct that underlies our case. Let me go back to the Manders factors, and this was discussed a little bit earlier, but I want you to address why Florida's CFO's appointment of the association's board members, why that doesn't suggest great state control. Well, because that's sort of the extent of it from the CFO, particularly before the... If you don't apply the changes in the law, there's no removal powers. And as articulated earlier, in the courts, the court often considers whether the Senate is involved as well in Senate confirmation. Lissinsky is actually an interesting comparison. So in Lissinsky, the court highlighted six elements related to control of the entity. All six that are highlighted in Lissinsky do not apply to NICA, at least during the relevant time period, if you do not apply the new laws. First one, the board was appointed by the governor and approved by the Senate. Here, this board, which is not a state board, is appointed by the CFO but not approved by the Senate. Lissinsky, the governor could remove board members. NICA, no removal powers. Lissinsky, executive director approved by the governor, confirmed by the Senate. Here, NICA appoints its own executive director. There's no Senate confirmation. Lissinsky, the budget submitted to multiple state officials and entities. Here, no such budget submissions for NICA. Lissinsky, the budget subject to approval by the governor. NICA's board approves its own budget, which is separate from the state. And that is a hugely salient consideration in this court's arm of the state inquiry  And finally, Lissinsky . . . The only factor. I'm sorry, Your Honor. I believe the district court judge found it was neutral. And particularly when considering the discretion for the function at issue, and the functional approach under Manders should apply. It applies in all instances. And for that function, the payment of claims, NICA's brief, page two, says, at issue in this case is NICA's treatment of itself as the payer of last resort. It's not mandated by the state. It's not set forth in the statutes. It is self-treatment. And the ability to make that choice evidences NICA's autonomy and independence for the function at issue. Now . . . If there are no funds left in the possession of the association, who would pay a judgment against the association? I don't . . . I believe that it wouldn't be enforceable against any other entity, Your Honor. With respect to the function . . . But . . . The state would be required to put in $20 million. But beyond that . . . Let's say it was . . . Let's say it was insolvent and, you know, it's $100 million insolvent. The state is only required to put in $20. And it could decide then either to fund the rest of it or not fund the rest of it, is what you're saying. I'm sorry, Your Honor. There is the $20 million that was appropriated back in 1988. There was two $20 million tranches. The second could be transferred to the association. But, yes, I don't think there's any other liability from the state. The state's treasury is not exposed. You know, those are the real . . . The core inquiries on the last factor, who's responsible for a judgment, is would it have to be paid from the general state treasury or could the state be legally liable? Meaning, could it be enforced against the state? The answer to those questions is no. NICA doesn't really contest that on brief. And in addition, the notion that, well, the legislature might decide to jump in and do something, that's speculation. It's not a showing. But you say that even though under Florida Statute 766.2, .3155E, plans funds are defined by statute to be funds of the state of Florida. That's still your position? Yes, Your Honor. I think it's important to read that language in context. In the context of that subsection, that entire subsection is really dealing with investments. And the second sentence then says that the plan may only invest its funds as prescribed in another state statute. So I think it's to help facilitate those investments. And it doesn't change the fact that neither of those core questions under the fourth factor paid out of the state general treasury are legally liable and none are satisfied. But what about subsection F? Doesn't it say the association's funds are, quote, funds of the state of Florida, close quote? Your Honor, I believe that's a subsection E or at least subsection E for the original one that, again, is the subsection that deals with NICA's investments. And we believe it's to facilitate their investments and also does not address the core questions presented by the fourth manders factor. By doing that, is the state also able to include the monies in the fund in its assets when it's doing its accounting or not? I believe they are actually accounted for separately. And that's sort of the discreetly presented component unit designation. It's not presented as part of the state budget or financials, although it is separately accounted for. And, Your Honor, for these reasons and those stated on brief, we'd ask that the court affirm the district court's ruling and remand this case so that merits proceedings can begin. Thank you. Thank you, Mr. Finney. Mr. Siegellaub, you've reserved some time for rebuttal. Yes, thank you, Your Honor. I'll just respond to a few points that the adversary raised. First, about the waiver of sovereign immunity, he noted that that state's sovereign immunity, we're concerned with federal sovereign immunity here. And that's true. But the significance is not, we're not saying that the state's sovereign immunity is dispositive. What we're saying is that the fact that the state recognizes NICA's sovereign immunity is a clear indication that the state considers NICA to be part of the state, which is factor one. So it is significant in the federal analysis. Because you're saying that if that were not the case, then there wouldn't be any basis for the state to ask for, or not really ask for, but effectively demand sovereign immunity from the state. I'm sorry, Your Honor. I'm not sure I follow the question. If the state did not view NICA, at least in part, as a state entity, then there would be no basis for sovereign immunity from the state. That's exactly right, Your Honor. Only public entities can have sovereign immunity. So the fact that NICA has it under state law shows that the state considers it to be part of the state. The next thing I would note is this discussion of state agencies having particular significance. That's just semantics, Your Honor. The cases he's referring to use the word agency in presenting the legal issue. They say states and state agencies have 11th Amendment immunity. But the entities that they actually consider are not called agencies. They're boards, or universities, or councils. So those cases use the term agencies informally to mean state instrumentalities in general. There's no heightened significance to an agency versus a different instrumentality. The next thing is the budget approval. He noted that NICA approves its budget. The statutes are very clear that NICA can only spend money on two things. One is payment of claims, which I discussed before. That's controlled by the ALJ. And the other is reasonable administrative expenses. So it can't spend money on anything. It's just reasonable expenses. And if you look at the state's financial statements, which are in the record, the administrative expenses are a minimal portion of the budget. I think in the most recent reported here in the record, it was over $40 million of claims and approximately $2 million of expenses. So the state is controlling how NICA spends its money. He talked about the decision to treat itself as the payer of last resort. That's not a decision that NICA made on its own. That was commanded by the statutes because the statutes say that it has to treat itself as the payer of last resort unless federal law says otherwise. And NICA simply interpreted the federal Medicaid provisions to not treat it as a third party to Medicaid. So that wasn't a discretionary choice. That was commanded by the statutes. Thank you, Your Honor. All right, thank you, counsel.